## OXFORD FERRY COMPANY v. COMM'RS OF SUMNER CO.

FERRY LICENSE; *Power and Jurisdiction of County Board; Mandamus Refused.* Where B. presented his petition under section 2 of the ferry act, to the board of county commissioners then in session, for license to keep a ferry across the Arkansas river at Oxford, and before the final hearing of his petition, and on the next day, M. also presented his petition for a like license at the same place, and both petitions were heard together, and both petitioners presented oral testimony of their abilities and facilities to accommodate the public in keeping and operating a ferry at Oxford, and after all the testimony had been introduced the majority of the county board granted a license to M., and refused one to B., and it is not shown or claimed that the commissioners acted capriciously, corruptly, arbitrarily or oppressively, this court will not interfere by mandamus to compel said board of county commissioners to order the county clerk to issue a license to B.

### Original Proceedings in Mandamus.

A PETITION was filed in this court on 30th June 1877, by *Wm. Baughn* and three others, partners under the name and style of "*Oxford Ferry Company*," as plaintiffs, against the *Board of County Commissioners of Sumner Co.*, as defendant, praying for a peremptory mandamus, etc. An alternative

writ was issued, to which defendant made due return, show-
ing cause. The facts appearing in the record, and shown on
the hearing, fully appear in the opinion, *infra.* Decision
made, and peremptory writ refused, on the 21st of December
1877.

*McDonald & Minor,* for plaintiffs.
*Woods & Herrick,* and *Thomas George,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: This is an application for a mandamus to
compel the board of county commissioners of the county of
Sumner to order the county clerk of said county to issue a
license to the plaintiffs, composing the Oxford Ferry Com-
pany, to operate and maintain a ferry across the Arkansas
river near the town of Oxford. The facts in the case are as
follows: On the 25th of May 1877, the plaintiffs presented
to the county board of said county a petition signed by forty-
three residents of Oxford township, praying that a license be
granted to them under their firm-name to establish, operate,
and maintain a ferry across the Arkansas river opposite the
town of Oxford in said township. The plaintiffs then proved
to the satisfaction of the defendant that the signatures to the
petition were genuine, and the further hearing was postponed
to the next day, May 26th. On the morning of the 26th,
the plaintiffs appeared before the county board and asked
that their petition be taken up and acted upon. Thereupon
one John Murphy filed his petition with the board, signed
by twenty-three residents of Oxford township, praying that
a license be granted to him to establish, operate, and main-
tain a ferry across the same river, and at the same point as
applied for by the plaintiffs. The county board, against the
objection of the plaintiffs, decided to consider the petition of
the said Murphy at the same time as the petition of plain-
tiffs, and that evidence might be introduced by the respective
parties. It was shown by the plaintiffs that since the de-
struction of the bridge across the Arkansas river at the point

mentioned in their petition, they had been operating for the accommodation of the traveling public a skiff, or small boat, to carry passengers over the river; that they had leased of one C. E. Kimball, the owner of the land along the west bank of the river, land for a distance of three hundred feet for a ferry-landing. They also presented and asked to have considered a written agreement from one H. L. Benedict, claiming to be the agent of one R. Wanser, giving to them certain rights and privileges to the lands on the east bank of the Arkansas for ferry purposes, to show that plaintiffs had the exclusive right to the use of the east bank of said river for a ferry-landing; and the plaintiffs proved that the land on the east bank of said river opposite said town of Oxford belonged to the said R. Wanser, who was on that day absent from the county, and had been absent for a long time, and that H. L. Benedict was a tenant of said Wanser, residing on a farm a short distance from the river. The plaintiffs further proved that they had commenced work on the approaches for a ferry-landing on the west bank of the river, on said 26th of May; that one of the firm had started for Wichita on the 25th for the purpose of constructing a ferry-boat to be used at their ferry, with sufficient means to build a good boat, and that they were able to give a good and sufficient bond for the proper fulfillment of their duties as required by law.

Said Murphy proved to the county board, that a corporation called the "Oxford Bridge-and-Ferry Company" had been organized in 1872, under and by virtue of the laws of the state of Kansas, and had built the toll-bridge across the Arkansas river at the town of Oxford, which was carried away by the high waters on the 18th of May 1877; that on the 21st. of May, the directors of this corporation held a meeting and contracted with the said Murphy to build and operate a ferry boat at or near said bridge site, which contract was in writing, and presented in evidence; that the said Murphy had ferry privileges on the west bank of the river within fifty feet of the bridge; that in pursuance of

said contract the said Murphy, on the 23d of May, left Oxford for Wichita for the purpose of building a ferry boat to be used at said ferry, the boat to be at Oxford by the 28th of said May thereafter, or as soon as possible.   One J. L. Abbott also testified that he was the agent of said R. Wanser for the purpose of looking after his timber along the east bank of the river, and to prevent persons cutting timber on his lands, and that he has given permission to said Murphy to land his boat on the east side of the river on Wanser's land, until Wanser's return.

Thereupon the defendant granted the petition of John Murphy, and refused the petition of the plaintiffs, against the remonstrance and protest of Samuel Bain, one of the members of the county board.   Murphy thereupon paid into the county treasury the sum of forty dollars, being the amount of his license for one year, and executed his bond as required by law; and the county clerk issued to him a license to establish, operate, and maintain a ferry at the point contended for during one year, in accordance with the orders of the defendant; and said Murphy has ever since that time been operating a ferry across the Arkansas river opposite the said town of Oxford at a point within fifty feet of the site of the former bridge of the bridge-and-ferry company.   Said Murphy has, since the said 26th of May, leased from the said Wanser all the ferry rights and privileges on the east bank of the river opposite the town of Oxford for the space of one year from June 18th 1877.

The counsel for the plaintiffs have not seen fit to file any brief in the case, nor have they attempted to enlighten us by oral argument, or otherwise, as to the points upon which they rely; and within our rules we might dismiss the case for want of prosecution.   But having given due consideration to the questions presented by the facts recited in the record, and having carefully considered the statute regulating ferries, and finding sufficient reason for refusing a peremptory writ of mandamus, we think it best to dispose of the case on its merits.   Sections 2 and 4 of the ferry act, (Gen. Stat. 499,) are as follows:

"SEC. 2. Any person or corporation may petition the board of county commissioners of the county for license to keep a ferry, and if said board believes such ferry necessary for the accommodation of the public, it shall order the county clerk to issue a license, upon the payment of the tax to be assessed in such order." * * *

"SEC. 4. Upon the production of the receipt of the county treasurer for the tax to the county clerk, he shall issue a license to keep a ferry at the place therein mentioned for one year."

If the license was legally issued to the second petitioner, viz., John Murphy, we suppose it will be conceded that the defendant could not be compelled to grant an additional license to the plaintiffs to operate a ferry at the same point. Hence, the only question really presented in the record is, whether the county board acted within the provisions of the law in ordering the county clerk to issue the license to Murphy. It is not shown nor claimed that the county board acted capriciously, corruptly, arbitrarily, or oppressively. When the first application was presented, and before the hearing thereon was concluded, the board adjourned till the next morning; and prior to the commencement of the hearing on that day, an additional petition for a license to keep a ferry at the same place was filed, and thereupon the board concluded to receive the evidence on each petition before taking final action. At the time of making this order both of the petitions were legally before the board for consideration. Much oral testimony was submitted. The commissioners had the opportunity of seeing and hearing the witnesses, of becoming well acquainted with the applicants, and fully understanding the facilities each had for faithfully carrying out his agreement; and having decided that they believed a ferry necessary at Oxford, it devolved upon them to make a selection from the persons applying for the license. They were the proper parties to judge which of the applicants was most worthy of their confidence and most likely to best accommodate the public in keeping and operating a ferry. Both could not succeed. They could accept one, and reject the other.

20 —19 KAS.

They were compelled to make a choice. Two ferries were not needed. In the exercise of their powers they granted a license to Murphy. The selection seems to have been judiciously made, and subsequent events have fully sustained the action of the majority of the board. We do not think the mere fact that the Oxford Ferry Company presented its application for a license prior to the petition of Murphy, any sufficient reason for compelling the issuance of the license to such company, so long as both petitions were really considered at the same time by the board. If such a ruling was adopted, the granting of a license to keep a ferry, would, in a conflict of applications, depend more upon the priority of the filings of the petitions than upon the ability and capability of the applicants to supply the public with ferry accommodations. In brief, if the claim of the plaintiffs is to be sustained, the statute is to be so construed that the interests of the public would be secondary to the priority of the filing of the various applications with the county commissioners. This construction should not be given to the statute, if it be susceptible of any other; and in our view this construction would be erroneous. The board of county commissioners is a tribunal with mixed powers, administrative and judicial; and it has full jurisdiction conferred upon it by the statute over the granting of licenses to ferries outside of the limits previously disposed of for ferry privileges by legislative enactments. It is a question whether the judgment and determination of the board as to the issuance of a license is not, in cases like this, final and conclusive, as a matter confided to their sound discretion. But whether their action may be subject to review, we need not determine. We find the board did not exceed its powers in granting the license to Murphy, and as no showing is made that an additional ferry is necessary for the public convenience, no wrong was committed in rejecting the application of the plaintiffs.

The application for a peremptory writ of mandamus must therefore be denied, and judgment rendered for the defendant for all costs.

All the Justices concurring.